*Formatted for Electronic Distribution*                                                                                               *Not for Publication*

UNITED STATES BANKRUPTCY COURT
DISTRICT OF VERMONT

Filed & Entered
On Docket
February 14, 2017

_____

**In re:**
  **Milky Way Organic Farm, LLC,**      Chapter 12
    Debtor.               Case # 12-10742
_____

**In re:**
  **Robert H. Clark, Jr.,**        Chapter 12
    Debtor.               Case # 12-10777
_____

                      **Jointly Administered Cases**

| Appearances: | *Rebecca Rice, Esq.* | *Melissa Ranaldo, Esq.* |
|---|---|---|
| | *Cohen & Rice* | *Office of the U.S. Attorney* |
| | *Rutland, Vermont* | *Burlington, Vermont* |
| | *For the Debtors* | *For the USDA Farm Service Agency* |
| | | |
| | *Jan M. Sensenich, Esq.* | *Heather Z. Cooper, Esq.* |
| | *Chapter 13 Trustee's Office* | *Facey Goss & McPhee, PC* |
| | *White River Junction, Vermont* | *Rutland, Vermont* |
| | *For the Trustee* | *For People's United Bank* |

**MEMORANDUM OF DECISION**
**GRANTING MOTIONS TO DISMISS AND DENYING MOTION TO MODIFY**

    Two secured creditors, People's United Bank and the USDA Farm Service Agency (together, the "Creditors") have filed motions to dismiss these jointly administered cases, based upon the Debtors' default in their obligations under a stipulation and their default under the terms of the confirmed Chapter 12 plan. The Debtors oppose dismissal and assert they should be given an opportunity to modify their confirmed plan to reflect their operational transition away from use of their assets as a full-time dairy farm to a much reduced dairy operation supplemented by income from non-farm employment and lease of the farm homestead through Airbnb. While the facts are generally undisputed – and the Debtors admit they have defaulted on their obligations under the confirmed Chapter 12 plan and stipulation – this contested matter nonetheless presents a close call which requires the Court to balance the rights of family farmers to reorganize under Chapter 12 against the rights of secured creditors to enforce their bargained-for remedies when the terms of the reorganization are breached.

1

For the reasons set forth below, the Court finds the Creditors have established cause to dismiss these jointly administered Chapter 12 cases and grants their motions. In light of this ruling, the Court does not address the merits of the Debtors' proposed modified plan and denies the Debtors' motion to modify their plan as moot.

## JURISDICTION

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Order of Reference entered in this District on June 22, 2012. The Court declares the issues raised by the motions to dismiss and the motion to modify are core matters under 28 U.S.C. §§ 157(b)(2)(A), (L) and (O), over which this Court has constitutional authority to enter a final judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In order to put this contested matter in context, it is essential to set out the entire procedural history of these jointly administered cases.

The cases began in the fall of 2012 when Milky Way Organic Farm, LLC ("Milky Way") and Robert H. Clark, Jr. ("Mr. Clark" and together, the "Debtors") filed petitions for relief under Chapter 12 of the Bankruptcy Code. Promptly after the filing of the two cases, the Court granted the Debtors' request for joint administration (doc. # 23). At that time, Milky Way was managed and operated by Robert Clark, Sr. and Mary Saceric Clark; their son, Robert Clark, Jr., worked on the farm with them. From the outset, the primary creditors in the case were the United States Department of Agriculture Farm Service Agency ("FSA"), People's United Bank ("People's"), and the Vermont Agricultural Credit Corporation ("VACC") (together, "the Secured Creditors").

After approximately one year of good faith and intense negotiations, the Debtors, the Secured Creditors, and the Chapter 12 trustee entered into "The Stipulation for Confirmation of Chapter 12 Plan and for Liquidation of Personal Property and Stipulation for Relief from Stay and Foreclosure as to Real Property in the Event of Default" (doc. # 98, the "Stipulation"), and on October 17, 2013, this Court entered an Order (doc. # 100) approving that Stipulation. Five days later, the Court entered an Order (doc. # 103) confirming a Chapter 12 plan (doc. # 90) which, by its terms, incorporated all of the rights, obligations, remedies, and provisions set forth in the Stipulation (doc. # 103, ¶ 25).

On July 25, 2014, the Debtors filed a motion to modify the confirmed plan, along with a proposed modified Chapter 12 plan (docs. ## 125, 126), asserting that modification was necessary to cure an arrearage which arose due to a delay in the commencement of payments. People's filed an objection to this motion to modify, based upon the modified plan's failure to include a reference to the Stipulation, failure to specify a date by which the Trustee would distribute certain funds to creditors, and failure to clearly articulate certain crucial numbers (doc. # 128). Thereafter, the Debtors filed a new modified plan

2

(doc. # 131) which specifically referenced and incorporated the Stipulation; the Secured Creditors consented to that modified plan; and the Court entered an order confirming the modified plan on October 2, 2014 (doc. # 135, the "Confirmed Plan").[1]

Unfortunately, about a year later, Mr. Clark, Sr. passed away (doc. # 180).  His death caused Mrs. Clark and Robert Clark, Jr. extreme emotional distress, and left Mrs. Clark and Robert Clark, Jr. to manage and operate the farm by themselves.  This, in turn, had a significant economic impact on the farm's operations, and the Debtors fell behind in the payments due under the Confirmed Plan shortly thereafter.

On September 14, 2016, the Trustee filed a Motion to Dismiss the cases (docs. ## 166, 167), alleging plan payment arrears of approximately $20,000.[2] One month later, People's filed a motion to enforce its rights under the Stipulation, alleging the Debtors had breached the Stipulation by *inter alia*, failing to make the required plan payments, failing to provide proof of adequate insurance, failing to provide proof of payment of real estate taxes, failing to provide timely monthly operating reports to the Secured Creditors, and failing to comply with the prohibition against incurring debt in excess of $5,000 (doc. # 168).  Based upon these defaults, People's asserted it was entitled to automatic relief from stay and entry of a foreclosure judgment, pursuant to the terms of the Stipulation. The Debtors did not respond to this motion, and only filed an objection to the Trustee's Motion to Dismiss, stating a modified plan would soon be filed which would "either cure all arrearages or provide for the sale and/or surrender of certain collateral" (doc. # 169).  Significantly, the Debtors did not deny the factual allegations of the Trustee's motion nor address any of the alleged breaches of the Confirmed Plan and Stipulation which People's had asserted.  On October 17th, the Court entered an Order (doc. # 170, the "Enforcement Order") (a) finding the Debtors were in default under the Stipulation and had not timely cured the default, and (b) granting People's motion to enforce the Stipulation and its request for relief from the automatic stay to pursue its state law remedies against the Debtors' real and personal property.

Subsequently, the Debtors sought, and the Court granted, an extension of time for the Debtors to file a modified plan (doc. # 173). The Debtors filed a motion to modify along with a proposed modified plan on November 4th (docs. ## 180, 181), to which both FSA and People's objected (docs. ## 182, 183). In this proposed modified plan, the Debtors proposed to reduce their milking herd through the sale of about half of their cows, to pay the proceeds of any cow sales directly to FSA, and to cure the payment arrears over the remaining term of the plan. That modified plan also had a provision incorporating the

---

[1] The Confirmed Plan was further modified on March 31, 2015, based upon the consent of all parties, to create a new payment schedule. However, this did not change any other term of the confirmed Chapter 12 plan.
[2] This was the Trustee's second motion to dismiss.  He had previously filed a motion to dismiss on November 12, 2015 (doc. # 154), which he subsequently withdrew .

3

terms of the Stipulation into the modified plan by reference (doc. # 181, p. 3). The Creditors' objections to the modified plan were very detailed and included specific references to the Debtors' plan payment default, the Debtors' failure to comply with the Stipulation, the Debtors' failure to file timely operating reports, the Debtors' recent sale of collateral without the consent of FSA, the Debtors' failure to deliver all proceeds of that sale to FSA, and the Debtors' failure to demonstrate that the modified plan would be feasible, see docs. ## 182, 183. The matter was set for an evidentiary hearing in mid-January.

The Court heard approximately 3 hours of testimony on January 13, 2017, and approximately 5 more hours of testimony at the continued evidentiary hearing on February 3, 2017. At the first hearing, the focus of the testimony the Debtors presented (through Robert Clark, Jr., Betsy Miller, and Mary Saceric Clark) was on a further modified plan which the Debtors had not yet filed or shared with the Creditors, and which depended significantly on income from non-farm employment and lease of the farmhouse through Airbnb. The Court directed the Debtors to file and serve that further modified plan by January 18, 2017, which they did, see doc. # 197. On that same day, People's filed a joinder in the Trustee's Motion to Dismiss (doc. # 198) and soon thereafter filed further opposition to the Debtors' motion to modify based upon the Debtors' latest proposed modified plan (doc. # 200). On February 1, 2017, FSA also filed a joinder in the Trustee's Motion to Dismiss (doc. # 201). On February 6, 2017, counsel appeared to present oral argument. At that final hearing, the Trustee orally withdrew his Motion to Dismiss and voiced his support for the Debtors' position, and the Court determined it was proper to treat People's and FSA's joinders as independent motions to dismiss. At the conclusion of the final arguments, the Court took the matter under advisement.

## ISSUES PRESENTED

The primary issue presented in this contested matter is whether the Creditors have established cause for dismissal of these two jointly administered Chapter 12 cases. If the Court finds the Creditors have not met this burden, and denies the motions to dismiss, then the Court will determine whether the modified plan before the Court meets the requirements for confirmation.

## DISCUSSION

The decision of whether to dismiss a Chapter 12 case is squarely within the discretion of the Bankruptcy Court. In re Victorious, LLC, 545 B.R. 815, 824 (Bankr. D. Vt. 2016). Section 1208(c) of the Bankruptcy Code[3] establishes the standard for dismissal of a Chapter 12 case:

> (c) On request of a party in interest, and after notice and a hearing, the court may dismiss a case under this chapter for cause, including—
> (1) unreasonable delay, or gross mismanagement, by the debtor that is prejudicial to creditors;

---
[3] All statutory citations refer to Tile 11, United States Code (the "Bankruptcy Code"), unless otherwise indicated.

4

 (2) nonpayment of any fees and charges required under chapter 123 of title 28;
 (3) failure to file a plan timely under section 1221 of this title;
 (4) failure to commence making timely payments required by a confirmed plan;
 (5) denial of confirmation of a plan under section 1225 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;
 (6) material default by the debtor with respect to a term of a confirmed plan;
 (7) revocation of the order of confirmation under section 1230 of this title, and denial of confirmation of a modified plan under section 1229 of this title;
 (8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan;
 (9) continuing loss to or diminution of the estate and absence of a reasonable likelihood of rehabilitation; and
 (10) failure of the debtor to pay any domestic support obligation that first becomes payable after the date of the filing of the petition.

11 U.S.C. § 1208(c) (2016). This is an illustrative, non-exclusive list and the Court must determine whether cause has been established in each case, based upon the unique facts and circumstances presented. See Ellis v. NBT Bank, N.A., No. 5:12-cv-01803, 2013 WL 140405, at *3 (Bankr. N.D.N.Y. Jan. 11, 2013).

 The Creditors assert there is cause to dismiss these cases, under § 1208(c) generally, and particularly under § 1208(c)(6) and (9). First, the Creditors demand dismissal based upon the Debtors' failure to comply with various terms of the Stipulation, because the Stipulation was a carefully designed compromise that made Chapter 12 confirmation possible and contained built-in remedies in the event of default. Second, the Creditors argue the Debtors' breaches of particular provisions of the Stipulation, as well as their plan payment defaults, constitute cause for dismissal under § 1208(c)(6). Third, the Creditors contend the Debtors are unable to effectively reorganize under Chapter 12 within a reasonable period of time, establishing cause for dismissal under § 1208(c)(9).

 1. DOES THE DEBTORS' DEFAULT UNDER THE STIPULATION CONSTITUTE CAUSE FOR DISMISSAL?

 The Secured Creditors' support and cooperation in this Chapter 12 case was indispensable to Plan confirmation. The record establishes that the Debtors – like many other hardworking Vermont farmers – had been struggling financially for several years prior to seeking bankruptcy relief, and the Secured Creditors supported the Debtors' efforts to reorganize under Chapter 12 by consenting to continued use of their collateral, on condition that the Debtors comply with the obligations articulated in the Stipulation. The testimony from all parties underscores the fact that but for the parties' reaching this agreement, the Chapter 12 case could not have moved forward. As FSA describes it,

> The stipulation permitted the Debtors to continue operation of their dairy farm as long as certain benchmarks were met and monthly reports filed. Following four years of pre-petition losses, and notwithstanding the marginal feasibility demonstrated by the Debtors, the creditors agreed to give the Debtors one last chance to reorganize and pay their debts in order to preserve the dairy operation and save their home, which further secures FSA's debt. FSA was willing to agree to confirmation in reliance upon the conditions imposed by the Stipulation, and with the understanding that the failure of this plan would result in the voluntary liquidation of its collateral and payment of a significant portion, if not full payment, of FSA debt. FSA worked hard in the confirmation process to ensure that the Debtors would be given the best chance to succeed. A chief consideration urged by the Debtors and understood by FSA was the interest in providing Robert Clark Sr. continuity of life activities during his treatment and recovery from cancer.

Doc. # 182, ¶ 10, p. 3-4. None of the Debtors' witnesses disagreed with this rendition of the facts.

It is undisputed that the Debtors failed to meet several of their obligations under the Stipulation. On cross-examination, Mary Saceric Clark admitted the Debtors (i) failed to timely file operating reports each month,[4] (ii) sold 10 cows (which were collateral for FSA's secured claim) without FSA's prior consent, (iii) failed to deliver all proceeds of that sale to FSA, (iv) failed to liquidate all personal property, livestock, and machinery upon notice of default from FSA per the Stipulation's default provision, and (v) had borrowed more than $5,000 on more than one occasion.[5]

Based upon this record, the Court finds the Stipulation was the foundation of the Debtors' reorganization, the Debtors' breach of the Stipulation gave rise to remedies the Debtors and Creditors had jointly negotiated, and based upon the particular circumstances here, the Debtors' default under the terms of the Stipulation constitutes cause for dismissal under §1208(c).

### 2. IS THERE CAUSE FOR DISMISSAL DUE TO MATERIAL DEFAULTS UNDER THE PLAN?

The term "material default" is not defined by the Bankruptcy Code. In construing this term in the context of Chapter 12 cases, courts must take into account the high level of unpredictability and various other exogenous factors that could have a determinative impact on a farm's success. In the context of dairy farmers, for instance, this would most notably include the weather and milk prices. Because farmers are regularly subject to circumstances beyond their control, it is just and appropriate for courts to give Chapter 12 debtors an opportunity to modify their plans, and pursue alternate approaches to financial reorganization, before dismissing their case based upon a default under the terms of their initial plan. See

---

[4] The Debtors were required to file an operating report each month, reflecting the past month's income and expenses, but the Debtors repeatedly filed operating reports in bulk after the due date had passed. For instance, the Debtors filed 4 separate operating reports, covering August 2013 to November 2013, on December 21, 2013, and filed 4 separate operating reports, covering January 2014 to May 2014, on June 25, 2014. This pattern recurred throughout 2015 and 2016.

[5] At the hearing, Mary Saceric Clark testified she had loaned certain sums of money to Milky Way and had identified these transfers as "loans" on her operating reports. However, she also testified she did not consider these transfers to and from family members to be the types of "loans" that were prohibited by the Stipulation.

COLLIERS ON BANKRUPTCY, 16TH ED. ¶ 1208.03[6], p. 1208-7 (citations omitted).  Here, the Debtors not only faced the usual challenges and unpredictability associated with farming, they also experienced the untimely death of Mr. Clark, Sr.  The Court recognizes the devastating impact this sad event had on the Debtors' plan of reorganization and for their farming operation in general. The Creditors and Trustee also acknowledged the many unpredictable aspects of farming, and described the accommodations and exceptions they made particularly in response to the Clark family's personal tragedy before claiming a material default.

The Creditors presented evidence and arguments reciting the many opportunities the Debtors have already had to modify their reorganization plan.  In October of 2013 and October of 2014, the Debtors proposed modified plans to cure plan payment arrears, and upon the Creditors' consent, the Court confirmed those modified plans (docs. ## 135, 148). Then, in November of 2015, the Trustee filed his first motion to dismiss (doc. # 154) based upon the Debtors' failure to make plan payments, but he subsequently withdrew that motion based upon the Debtors' assertion that they would bring payments current by January 15, 2016. Nine months after the proposed due date to become current, the Trustee filed another motion to dismiss, asserting the Debtors were once again behind on their plan payments (docs. ## 166, 167). Despite the Debtors' repeated failure to stay current in plan payments, the Creditors refrained from claiming a material default under the terms of the Confirmed Plan, until now.

It is undisputed that the Debtors are currently in default on their plan payment obligations. Although the testimony was less than clear with regard to the actual amount of the arrearage, the Trustee and Mrs. Clark both acknowledged on the record that the Debtors are behind on their plan payments. In light of this uncontroverted fact and the history of the case, the Court finds it is time to declare the Debtors' plan payment default a material default under the Plan.

Additionally, because the terms of the Stipulation were explicitly incorporated into the Confirmed Plan, a default under the Stipulation constitutes a plan default:

> The terms of the Stipulation for Confirmation, filed in this case on October 11, 2013 is incorporated herein by reference and nothing in this order shall supercede the terms of that Stipulation or the Order of this Court approving that Stipulation.  In the event of any conflict between the terms of this order [sic] and the terms of that Stipulation and the Order approving it, the terms of the Stipulation and Order approving it shall control.

Doc. # 103, p. 5, ¶ 25.  There is nothing in the record to support a finding that the Debtors' defaults under the terms of the Stipulation were specifically caused by circumstances beyond the Debtors' control. As discussed above, Mrs. Clark admitted that the Debtors sold 10 cows in the summer of 2016 for $17,000, did not obtain FSA's consent prior to that sale, paid over only $14,000 of the proceeds to FSA, and to date has not paid FSA the remaining $3,000 due from the sale of FSA's collateral.  Courts have long

7

recognized that sales of collateral without secured creditor approval is an important factor to consider in ruling on motions to dismiss Chapter 12 cases. See e.g., In re Suthers, 173 B.R. 570 (W.D. Va. 1994). The Debtors offered no evidence that their failure to obtain advance approval for the sale, their failure to pay FSA all sale proceeds, or their failure to timely file operating reports each month were due to circumstances beyond their control. Consequently, the Court also finds the Debtors' default under these terms of the Stipulation is a material default under the Confirmed Plan.

In sum, the Debtors' plan payment default, and the Debtors' failure to comply with the Stipulation, each constitute a material default under the Confirmed Plan, and establish cause for dismissal under § 1208(c)(6).

### 3. IS THERE CAUSE FOR DISMISSAL BASED UPON THE DEBTORS' INABILITY TO REORGANIZE WITHIN A REASONABLE PERIOD OF TIME?

The Creditors also seek relief under § 1208(c)(9), arguing that there is no reasonable likelihood of rehabilitation for the Debtors in Chapter 12. Although FSA introduced some exhibits in an attempt to demonstrate the Debtors will not be able to reorganize in a reasonable period of time, those exhibits were not admitted. At best, the evidence the Creditors and Debtors presented on this point was unclear. The Creditors had the burden of establishing facts to prove this argument and they failed to meet that burden. Therefore, the Court finds dismissal is not warranted under this prong of the Creditors' argument.

### 4. OTHER EQUITABLE CONSIDERATIONS

In addition to examining whether the evidence demonstrates the factors identified in § 1208(c), this Court also takes into account the equitable considerations in determining whether to dismiss these cases. The legislative history of Chapter 12 makes clear that it is an important national priority to protect farms:

> Chapter 12 is tailored to meet the unique economic realities of family farming during times of severe economic crisis. With chapter 12, Congress created a chapter of the bankruptcy code that provides a framework to prevent family farms from going out of business…The family farm is the backbone of the rural economy . . . all over the Nation. Without chapter 12 protection, a family farmer has little choice but to liquidate all assets, sell the land, equipment, crops and herd to pay off creditors if an economic crisis hits. This means losing the farm. Losing a farm means losing a supplier of food and a way of life. When a family decides it can no longer afford to farm, many times that farm is lost forever to development or sprawl.

146 Cong. Rec. H 11702 (1999) (statement by Rep. Baldwin). Chapter 12 provides crucial and extraordinary relief to farmers and fisherman who qualify for it. In order for Chapter 12 to work, however, creditors must be persuaded that the remedies set out in Chapter 12 will be available if Chapter 12 debtors fail to meet their obligations under confirmed plans. Courts must implement Chapter 12 in a manner which treats creditors fairly and ensures results that are predictable and consistent with the

8

Bankruptcy Code. See In re Fleishman, 372 B.R. 64, 71 (Bankr. D. Or. 2007) (holding that one of the purposes of Chapter 12 is to "insure that creditors receive a 'fair' deal under the debtor's plan."). "Congress imposed tight deadlines and said that if they were not met the Chapter 12 proceeding could be dismissed." In re Novak, 103 B.R. 403, 412 (Bankr. E.D.N.Y. 1989).

Both the testimony and terms of the Stipulation reflect the Creditors' willingness to engage in extensive negotiations, as needed, to formulate a consensual Chapter 12 plan. By its terms, the Stipulation amended the Debtors' plan, required the Debtors to comply with numerous obligations, and memorialized the parties' collaborative endeavor to both maximize the Debtors' opportunity to successfully reorganize and provide the Creditors with prompt and effective remedies in the event the Debtors were unable to do so. As a result of the parties' agreement, the Debtors operated under Chapter 12 for over four years and made their best effort to transform their operations into a more financially viable enterprise.

The Creditors' patience, flexibility, and support have been crucial to this case and reflect the type of collaboration that is essential to success under Chapter 12. Recently, the Creditors made the objective determination to change course, declare defaults, and seek their remedies under Chapter 12, the Stipulation and the Confirmed Plan. There is no basis in equity to deny the Creditors that relief.

### 5. THE DEBTORS' OPPOSITION TO DISMISSAL AND THEIR PROPOSED MODIFIED PLAN

The Trustee and Debtors urge the Court to deny the motions to dismiss on the basis that the Debtors deserve another chance to try to reorganize. The Trustee requests that the Court allow the Debtors to explore yet another modified plan, and implores the Creditors to "wait and see" what happens with the proposed Airbnb rental and off-farm employment. This is not a legal argument, and it does not address the valid factual and legal assertions set out in the Creditors' motions to dismiss or the criteria of the governing statute. The Debtors' filing of a motion to modify a plan in response to the motions to dismiss illustrates the Debtors' indefatigable desire, commitment, and intent to do all they can to save their family farm. Unfortunately, however, this proposal is not enough to defeat well-supported and legally compelling motions to dismiss. Under § 1227, the terms of a confirmed Chapter 12 plan bind the debtor as well as all creditors.

Since the Court has found the Creditors established cause to dismiss these cases, it need not address the merits of the Debtors' motion to modify the confirmed plan, nor the Trustee's arguments in opposition to dismissal based upon the proposed modified plan.

## CONCLUSION

The Court concludes FSA and People's have established cause to dismiss these cases on two grounds. First, based upon the unique circumstances of this case, and in particular, the Debtors' breach of

9

the fundamental agreement underlying the Chapter 12 cases, there is cause to dismiss these cases pursuant to § 1208(c). Second, the Debtors' breach of several requirements of the Stipulation and the Debtors' plan payment default are each a material default under the Confirmed Plan, and warrant dismissal pursuant to § 1208(c)(6). Therefore, the Creditors' motions to dismiss are granted. In light of this determination, the Debtors' motion to modify the Confirmed Plan is denied as moot.

This constitutes the Court's findings of fact and conclusions of law.

February 14, 2017  
Burlington, Vermont

Colleen A. Brown  
United States Bankruptcy Judge